IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HUGO E MIRANDA, Husband and Wife; and HERMINIA MIRANDA, Husband and Wife;<br><br>            Plaintiffs,<br><br>   vs.<br><br>CLASSIC CONCEPTS CONSTRUCTION, LLC, JOHN BENEFIELD, and PRAIRIE ENGINEERING, INC.,<br><br>           Defendants. | **8:19CV267**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56, for defendants John Benefield and Classic Concepts Construction, and for defendant Prairie Engineering, Inc. Filing Nos. 91 and 94. This is a diversity action pursuant to 28 U.S.C. § 1332. Plaintiff sues defendants alleging negligence. *See* Amended Complaint, Filing No. 73. Defendant Prairie and defendant Classic Concepts contend that plaintiff's exclusive remedy is worker's compensation. *See* Amended Answer, Filing Nos. 74 and 76.

**BACKGROUND**

This case involves a construction project that was ongoing on August 17, 2015 at the Dupont Pioneer HiBred International, Inc. facility located in York, Nebraska. The Pioneer Site was a seed corn processing facility used to produce seed corn for ultimate use by farmers for planting. Pioneer contracted with Defendant Prairie (as General Contractor) to erect a new building at the existing Pioneer Site, and otherwise do some additional work at the existing Pioneer Site and buildings. Specifically, Defendant Prairie

1

was also hired to do some retooling work and otherwise install equipment at the Pioneer Site for, among other things, placing seeds into packages or bags or boxes. Pioneer owned the facility and hired Prairie Engineering (Prairie) as the general contractor. Prairie hired Classic Concepts Construction (Classic) as a subcontractor, and Prairie also hired General Contractors, Inc., (General) to act as a subcontractor. Pioneer additionally hired Safety Management group of Indiana, Inc. to manage safety issues. The work done by General was distinct from the work done by Classic Concepts.

At some point toward the end of summer, General (the subcontractor) took its crew from the York project to another project in Atkinson, Illinois. Prairie asked that Hugo Miranda, an employee of General from Texas, and one other employee remain behind to assist Classic with meeting the deadline.

Miranda stayed and worked with Classic employees. On the day in question, Miranda was working with Francis Neville, an employee of Classic. They were working "in a scissors lift installing sheeting near an 18-foot overhead door." Filing No. 1, ¶ 10. The lift was about 7 ft. long by 3 ft. wide, and the enclosed sides were about 4 ft. high. Filing No. 95-1, Miranda Depo, p. 114, ll. 11-19. Neville was operating the lift, although Miranda was also familiar with it and knew how to operate it. *Id.*, Miranda deposition, p. 76, 13-16. The lift was not working correctly. Neville, apparently over Miranda's objection, removed all but one of the bolts with no problems. When he removed the last bolt, the tension in the spring was released, and the spring that operated the door came loose. Miranda put his hand out to protect Neville from being hit in the face, and the free-flying metal spring hit Miranda on his left hand.

The record is replete with contractual language requiring both the general contractor, Prairie, and the subcontractor, Classic, to adhere to safety training requirements. The contract stated: "[t]he following documents are a requirement of this subcontract – to be provided by Subcontract to Prairie . . . Safety Matric – documentation showing safety training for all the subcontractor tasks that will be performed on the Prairie Jobsite. The documentation should only show the employees that will be on this particular Prairie jobsite, listed with their safety training information, on your company letterhead and with your company's safety contract." (Subcontract p. 4, Article 10).

**STANDARD OF REVIEW**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013). "Summary judgment is not disfavored and is designed for 'every action.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013.). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But the nonmovant must do

more than simply show that there is some metaphysical doubt as to the material facts. *Torgerson*, 643 F.3d at 1042; and *see Briscoe v. City of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012) (stating that the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'").

When the nonmoving party bears the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 325 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S 144, 159 (1986)). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In response to the movants showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment) (quoting *Anderson,* 477 U.S. at 247-48). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

**DISCUSSION**

A. *Filing No. 91*

    1. *Arguments of defendants, Defendants John Benefield, Classic Concepts Construction, LLC*

First, defendants contend that defendant John Benefield has no personal liability in this matter, arguing that negligence of a corporate entity cannot be attributed to an individual. Plaintiff concedes there is no personal liability as to John Benefield and that summary judgment is proper as to him. The Court will grant summary judgment in favor of John Benefield.

Next, defendants contend that Miranda was a, loaned or borrowed employee, of Classic at the time of the incident. The defendants rely on a Nebraska Supreme Court case which held "when a general employer … loans an employee to another for the performance of some special service, then that employee … may become the employee of the party to which his services have been loaned." *Kaiser v. Millard Lumber, Inc.*, 587 N.W.2d 875, 880 (Neb. 1990) (quoting *Daniels v. Pamida, Inc.*, 561 N.W.2d 568 (Neb. 1997). The *Kaiser* Court further stated that the Workers' Compensation Act states:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Kaiser*, 587 N.W.2d 875, 880 (Neb. 1999) (quoting *Daniels*, 561 N.W.2d at 572). As stated in *Daniels*,

5

> [t]he loaned-servant doctrine provides that if an employer loans an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the party to whom his services have been loaned.... This common-law principle applies to cases arising particularly under the Nebraska Workers' Compensation Act and allows an employee to be simultaneously in the general employment of one employer and in the special employment of another. Thus, the loaned employee not only remains the employee of the person who loaned him or her but also may be the employee of the person to whom he or she is loaned.... In such cases, the employee may look to one or to the other or to both employers for compensation, since he or she is at the same time under a general and a special employment relationship.

(Citations omitted) *Daniels v. Pamida, Inc.*, 251 Neb. at 927, 561 N.W.2d at 571–72 (1997), *cited by Morin v. Industrial Manpower*, 687 N.W.2d 704, 712 (Neb. 2004).

In the case before the Court, defendants contend that Miranda was an employee of General (subcontractor). Classic asked to have an employee stay and work with the employees of Classic. Miranda allegedly chose to stay on this job when asked by his supervisor and, in part, did so as York was closer to his home in Texas. General paid plaintiff's wages and taxes; asked Miranda to stay in York; and Miranda agreed. General had left the job site; the work being done was for Classic; and Classic had the right to control the details of the work argue defendants. Thus, argues Classic, the exclusive remedy is for Nebraska Worker's Compensation. *See e.g., Daniels, supra,* 561 N.W.2d at 572;[1] *see Millard v. Hyplains Dressed Beef*, 468 N.W.2d 124 (Neb. 1991).[2] "Once an

---

[1] In *Daniels* the Court stated: "The evidence demonstrates that A-Help paid Daniels' wages and provided all payroll services such as withholding taxes and Social Security contributions. A-Help directed Daniels to report to the customer of its choice. However, Daniels had the right to refuse to report to any assignment as well as the right to terminate any assignment given. Daniels voluntarily went to work for Pamida and performed the tasks assigned to him. There is no question that Daniels had made at least an implied contract of hire with Pamida, and, therefore, part (a) of the three-factor test has been satisfied." *Daniels, supra*, 561 N.W.2d at 572.

[2] Section 48-111 states: Elective compensation; election; effect; exemption from liability; exception. Such agreement or the election provided for in section 48-112 shall be a surrender by the parties thereto of their rights to any other method, form, or amount of compensation or determination thereof than as provided in the Nebraska Workers' Compensation Act, and an acceptance of all the provisions of such act, and shall bind the employee himself or herself, and for compensation for his or her death shall bind his or her legal representatives, his or her surviving spouse and next of kin, as well as the employer, and the legal representatives of a deceased employer, and those conducting the

6

employee's injury is covered, and notwithstanding the availability of a claim against a third party, *see* § 48–118 et seq., an employee "surrender[s]" his or her "rights to any other method, form, or amount of compensation" from his or her employer, § 48–111." *Bennett v. St. Elizabeth Health Systems*, 729 N.W.2d 80 (Neb. 2007).[3]

  2. *Arguments of plaintiff*

Miranda contends that he remained an employee of General doing the work of General on behalf of Classic. There is, he argues, no implied contract with Classic, and Nebraska worker's compensation is not the exclusive remedy in this case. On the contrary, Miranda argues that the evidence in this case shows his intent to continue working for General.

---

business of the employer during bankruptcy or insolvency. For the purpose of this section, if the employer carries a policy of workers' compensation insurance, the term employer shall also include the insurer. The exemption from liability given an employer and insurer by this section shall also extend to all employees, officers, or directors of such employer or insurer, but such exemption given an employee, officer, or director of an employer or insurer shall not apply in any case when the injury or death is proximately caused by the willful and unprovoked physical aggression of such employee, officer, or director. Neb. Rev. Stat. § 4811.

Section 48-148 states: Compensation; action to recover; release of claim at law. If any employee, or his or her dependents in case of death, of any employer subject to the Nebraska Workers' Compensation Act files any claim with, or accepts any payment from such employer, or from any insurance company carrying such risk, on account of personal injury, or makes any agreement, or submits any question to the Nebraska Workers' Compensation Court under such act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury. Laws 1986, LB 811, § 75.

[3] The defendants also argue that plaintiff is contributorily negligent as a matter of law. 'A plaintiff is contributorily negligent if (1) the plaintiff fails to protect himself or herself from injury; (2) the plaintiff's conduct concurs and cooperates with the defendant's actionable negligence; and (3) the plaintiff's conduct contributes to the plaintiff's injuries as a proximate cause.' *Jensen v. Archbishop Bergan Mercy Hosp., supra*, 459 N.W.2d at 183. In this case, contend defendants, Miranda had a duty to protect himself from injury. He knew of the duty when he failed to consult with a supervisor and when he failed to take evasive action. Defendants argue that Neville was not the cause of the accident as Miranda failed to take actions to avoid the accident, and instead, failed to follow safety protocols and stepped in front of the spring. In that same regard, defendants also argue that plaintiff assumed the risk by stepping in front of the spring. Neb. Rev. Stat. § 25-21,185.12 (Reissue 2016) provides: "Assumption of risk is an affirmative defense. Assumption of risk shall mean that (1) the person knew of and understood the specific danger, (2) the person voluntarily exposed himself or herself to the danger, and (3) the person's injury or death or the harm to property occurred as a result of his or her exposure to the danger." *Id.* "Assumption of risk constitutes an absolute bar to recovery." *Zrust v. Spencer Foods, Inc.*, 667 F.2d 760, 765 f.n. 9 (8th Cir. 1982). However, because the Court rules hereinafter that worker's compensation is the exclusive remedy in this case, the Court will not further address these issues.

Next, Miranda contends that the worker's compensation statute releases only the employer with whom a settlement is reached. See Neb. Rev. Stat. § 48-148 ("shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury."). Thus, argues Miranda, all claims for an implied contract employment with Classic should be denied.[4]

**Analysis**

The Court notes that this case is very similar to one decided by the Nebraska Court of Appeals. Starostka v. Prevenative Maintenance, Inc., 2009 WL 906377 (Neb. Ct. App.

---

[4] Miranda also contends that any issue of fault allocation is often reserved for the trier of fact. The allocation of fault is typically reserved for the jury. See e.g., Traphagan v. Mid-America Traffic Marking, 555 N.W.2d 778, 783 (Neb. 1996). "[W]here reasonable minds may draw different conclusions and inferences regarding the negligence of the plaintiff and the negligence of the defendant such that the plaintiff's negligence could be found to be less than 50 percent of the total negligence of all persons against whom recovery is sought, the apportionment of fault must be submitted to the jury." Id. "Only when the evidence and the reasonable inferences therefrom are such that a reasonable person could reach only one conclusion, that the plaintiff's negligence equaled or exceeded the defendant's, does the apportionment of negligence become a question of law for the court." Id. The safety of the employees was a joint obligation, argues Miranda, as the Contract documents made them "responsible and jointly accountable for the execution of the [site specific safety] program." (Prairie Contract, para. 11, COR000008-9, Michael G. Reilly Foundational Affidavit submitted in support of Plaintiffs' Resistance to MSJ; Prairie Master Services Agreement documents, PrEng000036, Michael G. Reilly Foundational Affidavit submitted in support of Plaintiffs' Resistance to MSJ; and, Classic Subcontract, PrEng-000019, Exhibit B to Thomas A. Grennan Foundational Affidavit submitted in support of Prairie's MSJ).

The evidence will show, argues Miranda, that Neville may have missed required safety meetings and may have been using drugs, says Miranda. These are factual issues, he argues, that must be presented to the trier of fact. Miranda says he was a worker on the site, and the contract provisions for safety were intended to cover all workers on the site.

Further, the rescue doctrine should apply, contends Miranda. "The rescue doctrine contemplates a voluntary act by one who, in an emergency and prompted by spontaneous human motives to save human life, attempts a rescue which he had no duty to attempt by virtue of a legal obligation or duty fastened on him by his employment." See Rasmussen v. State Farm Mut. Auto. Ins. Co., 770 N.W.2d 619, 625 (Neb. 2009) (citing Buchanan v. Prickett & Son, Inc., 279 N.W.2d 855, 858 (Neb. 1979)). "The rescue doctrine is shorthand for a public policy that imposes a duty of care owed to rescuers." Id. Whether and how this doctrine applies in this case is likewise a question of fact, contends Miranda. The Court in Rasmussen found that "[t]here remain material issues of fact regarding Lisbon's alleged negligence and the damages resulting from her alleged negligence." Rasmussen, 770 N.W.2d at 625, 627. Classic argues that Miranda's reliance on this doctrine is misplaced, as Miranda is trying to use this doctrine as a shield against his own negligence and assumption of risk. Classic contends that "[t]he rescue doctrine is therefore inapplicable to this case because Hugo Miranda elected to remain in the lift and allowed Neville to remove the bolts when he knew that an accident was practically inevitable under those circumstances." Filing No. 103 at 7.

Again, the Court need not address these issues, as it has determined that this case belongs in the worker's compensation court in the first instance and that worker's compensation is the exclusive remedy in this case

2009) (unpublished opinion).[5] In *Starostka*, the plaintiff was employed by Starostka Construction. In addition, Preventative Maintenance, Inc. (PMI) also served as a subcontractor. Starostka Construction loaned plaintiff to PMI, along with several other employees. Plaintiff was killed on the job. Plaintiff contended he was entitled to sue PMI. PMI argued that worker's compensation was plaintiff's exclusive remedy, as Starostka "loaned" him to PMI. The District Court granted summary judgment in favor of PMI. The Nebraska Court of Appeals determined that plaintiff was loaned by Starostka to PMI, and as such, plaintiff's negligence action against PMI was barred by the worker's compensation exclusive remedy. The Appellate Court, with regard to whether plaintiff was borrowed or loaned, and relying on *Daniels* stated:

> If the answer to the question posed is in the affirmative, then Michael's exclusive remedy was under the Nebraska Workers' Compensation Act. *See Daniels v. Pamida, Inc.*, 561 N.W.2d 568 (Neb. 1997) (Nebraska Workers' Compensation Act is employee's exclusive remedy against employer for injury arising out of and in course of employment).

*Id.* at 2. The Appellate Court also determined, relying heavily on Daniels, that during the week plaintiff was loaned, he took direction from PMI, that he was loaned to PMI, that he was supervised by PMI, he used PMI's tools and equipment, and he indirectly received wages from PMI. Thus, the Court found an implied contract existed. The Court concluded that "the fact is that James had remedies at law available to him against Starostka, PMI, or both for workers' compensation benefits." *Id.* at 5. Finally, the Court determined that "we affirm the district court's finding that Michael was a borrowed employee of PMI and that Michael's exclusive remedy lies in the Nebraska Workers' Compensation Act.

---

[5] Although this is an unpublished opinion, Neb. Ct. R. App. P. § 2-103(E) permits citing an unpublished opinion "if the opinion has persuasive value on a material issue and no published opinion of the Court of Appeals or another court would serve as well or when such case is related." This case is nearly identical to the one before the Court, and thus it has persuasive value.

9

Therefore, we also affirm the district court's grant of summary judgment in favor of PMI." *Id.* at 6.

In the case before this Court, Miranda was acting as an employee, or a loaned employee, of Classic Concepts. See *Starostka; Kaiser*, supra. As such, he is limited to the exclusive remedy provided by the Nebraska Workers' Compensation Act. *Id.* There is no dispute that General (subcontractor) had moved on to another job. Classic clearly dictated the work done by Miranda. Classic supervised the work and had the right to control the details of the work. The work being done by Miranda was clearly the work of Classic, not General. It is clear from the facts that Miranda was loaned by General to Classic which created an implied contract for work. No evidence has been presented to show that "objective manifestations that could reasonably infer that either [Classic] or [Miranda] did not intend to enter into a contract of hire would present a genuine issue of material fact." *Kaiser*, 587 N.W.2d at 882. Therefore, the exclusive remedy is workers compensation. *Id.* at 885.

### Filing No. 94. Defendant Prairie Engineering, Inc

"The Nebraska Supreme Court has held that a general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe." *Buresh v. Reinke*, 939 N.W.2d 392, 401-402 (Neb. 2020). *Thomas v. Kiewit Bldg. Group*, 914 N.W.2d 456 (Neb. 2018). "It is not liable when an employee is injured due to specific actions or inactions involved in the construction process." *Id.* Miranda, argues defendant Prairie, was not injured because of an unsafe workplace but because of the negligence of Neville and possibly Miranda.

Defendant Prairie Engineering files this motion for summary judgment contending that:

> 1. Defendant Prairie did not have control over the work site and is not liable for Plaintiff's injuries;
>
> 2. No liability can be imposed upon Defendant Prairie since Defendant Prairie did not supervise the work that resulted in Plaintiff's injuries;
>
> 3. Defendant Prairie did not owe any alleged nondelegable duty to Plaintiff since Plaintiff's injuries were caused by negligent work and not an unsafe workplace; and
>
> 4. Defendant is entitled to summary judgment since Plaintiff assumed the risk of his own injuries and Plaintiff was contributorily negligent as a matter of law.

Filing No. 94. In short, Prairie contends that "[g]enerally, one who employs an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants." *Didier v. Ash Grove Cement, Co.*, 718 N.W.2d 484, 489-90 (Neb. 2006). "There are two recognized exceptions to the general rule pursuant to which the employer of an independent contractor may be vicariously liable to a third party" the first of which is "the employer retains control over the contractor's work." *Id.* The Nebraska Supreme Court stated "whether Lueder maintained control over Eastlick's workplace" is related to whether Lueder "owed Eastlick a duty to protect him from the injury that occurred." *Eastlick v. Lueder Const. Co.*, 741 N.W.2d 628, 634 (Neb. 2007). "Although Lueder had a supervising role . . . [t]here was no evidence that Lueder had control over the work performed by Monona." *Id.* at 635. "Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case." Id. at 634. *See also, Dellinger v. Omaha Public Power Dist.*, 611 N.W.2d 132, 136 (Neb.

11

2000) ("Generally, one who employs an independent contractor is not liable for the contractor's negligence.").

Prairie contends that Pioneer was in control of the premises during construction. The accident occurred on the site owned by Pioneer. Prairie did not supervise the work on the premises. In addition, Prairie contends it did not own, control, or maintain the overhead door or the bolts, spring, and brackets at issue in the accident. See *Gaytan v. Wal-Mart*, 853 N.W.2d 181, 193 (Neb. 2014) (control over work). Miranda was supervised and instructed by Classic Concepts as the person in charge.

Miranda disagrees with the assertions by Prairie. Miranda contends that Prairie was given to access to the work area; agreed to conduct safety audits and compliance inspections, to "[p]roperly maintain, inspect, and supervise its designated work area and roadways to prevent unsafe work conditions. . . . [Prairie] shall…"(Prairie Contract, para. 11(F), COR000008, Michael G. Reilly Foundational Affidavit submitted in support of Plaintiffs' Resistance to MSJ). Referred to in Filing No. 99-1. Thus, argues Miranda, Prairie had control of the worksite as it relates to its safety duties.

The Court disagrees. "The Nebraska Supreme Court has held that a general contractor in possession and control of the premises is only liable when the subcontractor's employee is injured because the workplace premises were not safe." *Buresh v. Reinke*, 939 N.W.2d 392, 401-402; *Thomas v. Kiewit Bldg. Group*, 914 N.W.2d 456 (Neb. 2018). "It is not liable when an employee is injured due to specific actions or inactions involved in the construction process." *Id.* at 466. Plaintiff has failed to adduce evidence of un unsafe workplace that would support any claim of negligence in this case against Prairie. The injury was caused by Neville's negligence, and Miranda knew that

12

taking the screws out would cause the spring to hit them. Filing No. 95-1, Miranda depo. at 113-1-2.[6] Prairie did not supervise Miranda or Classic's employees. Plaintiff's injury relates primarily to alleged negligence attributed to Classic. The Court finds as a matter of law, Prairie is not liable for the negligence, if any, of Classic or the Classic employees.

THEREFORE, IT IS ORDERED THAT:

1. Defendants' motion for summary judgment, Filing No. 91, is granted as to defendant Benefield;

2. Defendant's motion for summary judgment as to Prairie, Filing No. 94, is granted; and

3. Defendants' motion for summary judgment as to Classic Concepts Construction, LLC, Filing No. 91, is granted.

4. A separate judgment will be entered in accordance with this memorandum and judgment.

Dated this 31st day of August, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

[6] Prairie also makes the same arguments as the remaining defendants regarding the application of assumption of risk and contributory negligence. The same analysis and conclusion apply here.